**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **KENNETH POIRIER,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **Case No. 22-cv-10900-DJC** |
| **MARTIN O'MALLEY, Acting Commissioner**<br>**of the Social Security Administration,** | ) ) ) ) | |
| **Defendant.** | ) ) ) | |

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, J.**                                                    **February 29, 2024**

**I.      Introduction**

Plaintiff Kenneth Poirier ("Poirier") applied for disability insurance benefits ("SSDI") and supplemental security income ("SSI") with the Social Security Administration ("SSA"). Pursuant to the procedures set forth in the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), Poirier brings this action for judicial review of the final decision of Defendant Martin J. O'Malley, Acting Commissioner[1] of the Social Security Administration ("the Commissioner"), issued by an Administrative Law Judge ("ALJ") on February 12, 2021, denying his claim. Poirier has moved to reverse and remand the decision of the Commissioner, D. 18, and the Commissioner has moved

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Martin O'Malley, the new Commissioner, as Defendant here.

1

to affirm the decision.  D. 28.  For the reasons stated below, Poirier's motion to reverse and remand

is DENIED, and the Commissioner's motion to affirm is ALLOWED.

## II.     Legal Standards

### A.     <u>Entitlement to Disability Benefits and Supplemental Security Income</u>

To receive SSDI and SSI benefits, a claimant must demonstrate that he is disabled, as

defined by the Social Security Act (the "Act") and corresponding regulations.  42 U.S.C. § 423(a).

The Act and regulations define disability as an "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or has lasted or can be expected to last for a continuous period of not

less than [twelve] months."  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The

impact of the disability or disabilities must be so severe as to prevent a claimant from not only

maintaining employment similar to previous work, but also from doing any substantial gainful

activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–

404.1511.

The Commissioner must follow a five-step process to determine whether a claimant has a

disability for Social Security purposes and, thus, whether to approve the claimant's application for

benefits.  20 C.F.R. § 416.920(a).  If at any step in the process the Commissioner conclusively

finds the claimant to be disabled or not disabled, then the inquiry ends.  <u>Id.</u> § 416.920(a)(4).  First,

if the claimant is doing any substantial gainful activity, then the claimant is not disabled.  <u>Id.</u>

§ 416.920(a)(4)(i).  Second, if the claimant does not have, or has not had during the relevant time

period, a severe, medically determinable physical or mental impairment or combination of

impairments, then the claimant is not disabled.  <u>Id.</u> § 416.920(a)(4)(ii).  Third, if the impairment(s)

meets the conditions for one of the "listed" impairments in the Social Security regulations, then

the claimant is disabled.  <u>Id.</u> § 416.920(a)(4)(iii).  Fourth, if the claimant's "residual functional capacity" ("RFC") shows that the claimant can still perform past relevant work, then the claimant is not disabled.  <u>Id.</u> § 416.920(a)(4)(iv).  Fifth and finally, if the claimant's RFC, education, work experience, and age show that the claimant is capable of any other work in the national economy, then the claimant is not disabled.  <u>Id.</u> § 416.920(a)(4)(v); <u>see id.</u> § 416.960(c).

**B.**     **<u>Standard of Review</u>**

This Court may affirm, modify or reverse the decision of the Commissioner upon review of the pleadings and the record.  42 U.S.C. § 405(g).  Such review is limited to an evaluation of "whether there is substantial evidence to support the ALJ's fact findings and whether appropriate legal standards were employed."  <u>Jones v. Soc. Sec. Admin.</u>, 150 Fed. Appx. 1, 1–2 (1st Cir. 2005) (citing <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999)).  Issues of credibility and inferences drawn from the facts on record are the responsibility of the Commissioner who resolves conflicts in the evidence and determines the disability status of the claimant.  <u>Lizotte v. Sec'y of Health & Hum. Servs.</u>, 654 F.2d 127, 128 (1st Cir. 1981) (citing <u>Rodriguez v. Sec'y of Health & Hum. Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981)).  Accordingly, the ALJ's findings of fact must be affirmed when supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion."  <u>Rodriguez</u>, 647 F.2d at 222.

### III.    Factual Background

#### A.    Procedural Background

Poirier claimed an inability to work since April 24, 2017.[2]  R. 230, 232.  On July 30, 2019, Poirier applied for SSDI and SSI.  R. 125, 126.[3]  He alleged impairments including bipolar, depression, suicidal ideations, degenerative disc disease, osteoarthritis and chronic pain.  R. 93-94.  SSA denied the application on January 14, 2020.  R. 165.

On January 17, 2020, Poirier requested reconsideration of the initial denial,  R. 169, and the SSA and SSI affirmed the denial on reconsideration on April 4, 2020.  R. 171, 174.  On April 14, 2020, Poirier requested a hearing before an ALJ.  R. 177.  On August 11, 2020, Poirier, his attorney, and a vocational expert attended a telephonic hearing due to the COVID-19 pandemic. R. 16, 40-66.  On February 12, 2021, the ALJ issued a written decision concluding that Poirier was not disabled.  R. 13-34.  Poirier appealed the decision to the Social Security's Appeals Council ("AC").  R. 11-12, 226-29.  On September 29, 2021, the AC denied request for review, rendering it the final decision of the Commissioner.  R. 5-7.  Poirier filed the instant case against the Commissioner, D. 1, and now moves this Court for an order reversing and remanding the Commissioner's final decision.  D. 18.  The Commissioner has moved for an order affirming the same.  D. 28.

#### B.    Before the ALJ

The record before the ALJ included the following: (1) testimony at the ALJ hearing; (2) Poirier's medical records; (3) a medical assessment submitted by Poirier's treating provider;

---

[2] Citations to the administrative record in this case shall be to "R. ____."

[3] It appears that Poirier's application is dated July 30, 2019, R. 125-26, but it was "completed" on August 8, 2019, R. 230, 232.

4

(4)  state agency expert examinations and assessments of Poirier's RFC; and (5) a function report submitted by Poirier.

### 1.    Testimony at the ALJ Hearing

Poirier testified before the ALJ at the hearing on August 11, 2020, and was represented by counsel.  R. 47-60, 65.

Poirier, age forty-four at the time of the hearing, stated that the last time he worked was two years ago.  R. 46-48.  He has a forklift license and used to work as a lobster trap foreman at Ketcham Traps for twenty years and then as an auto mechanic.  R. 47, 55-56.  Poirier testified that he only worked at Monroe Staffing in 2018 for six weeks because he had an accident with the forklift and had a "nervous breakdown" and left.  R. 54-55.  He explained that he has been doing some odd jobs since then but he was not paid for these jobs.  R. 48.  He further stated that he had difficulty driving because he could only sit for about fifteen to twenty minutes and when he got out of the car he "ha[d] to use my cane because I can't walk."  R. 48.

Poirier testified that he has constant back pain that runs through his private area and down his leg.  R. 49.  He stated that the only time he has relief is when he is laying down.  R. 49.  Poirier shared that he has been using a cane for about a year due to his back pain.  R. 48.  He testified that the cane was not prescribed to him and that he had not seen his doctor in about six months because of the pandemic.  R. 48-49.  Poirier stated that he could stand without the cane, but chooses to use it because he could fall.  R. 49.  He cannot walk for long periods of time and his daughter will sometimes help him walk up the stairs when he visits her.  R. 49, 52.  Poirier testified that he has not undergone surgery for his back pain and he has been seeing a pain management doctor who has prescribed him medicine and recommended physical therapy but he has been unable to attend

due to the pandemic.  R. 53-54, 59-60.  He used to go fishing as a hobby but he can no longer enjoy that activity due to his back pain.  R. 52-53.

In addition to his physical ailments, Poirier reported that he suffers from mental health challenges, including having bipolar episodes every month and panic attacks.  R 51, 58-60.  He has been seeing a psychiatrist once a month and counselor every other week.  R. 50.  Poirier stated that his bipolar disorder makes him act out of character by wanting to stay in the house or "makes me want to fight with people."  R. 58.  Poirier further testified that he suffers from anxiety, which makes him not want to go anywhere.  R. 58.  Poirier reported that he has panic attacks "[a]t least every other week or once a week" which last anywhere from three to four hours.  R. 59.  He also stated that he has been taking medications for his mental health which have side effects which make him tired.  R. 50.  Poirier mainly stays in bed due to depression and goes out "one or two days a week or a month."  R. 51.  He stated that its difficult for him to go to a store or socialize due to his anxiety.  R. 52.  Poirier testified that he currently spends his days watching television at his mother's house because he is homeless, R. 53, but occasionally socializes with his brother and cousin.  R. 52.

Poirier also testified concerning his past suicide attempts and hospitalization for same.  R. 56-60.  When asked if there had been recent changes to medication, Poirier stated that his medication has generally been the same, but he did switch from gabapentin because it made him feel sick.  R. 59.

Vocational expert Andrew Vaughn ("Vaughn") testified that Poirier's prior work as a lobster trap foreman and auto mechanic work both required heavy exertion.  R. 61.  The ALJ then asked a series of hypotheticals to discern whether individuals with RFCs potentially comparable to Poirier's functional capacity could perform Poirier's past work and whether there would be

other jobs in the national economy that could be performed by such hypothetical individuals.  R. 61-63.  Vaughn testified that these hypothetical individuals could not perform Poirier's past work. R. 62.  Vaughn, however, testified that there were other jobs in the national economy that they could perform, including as a cashier for ticket sales, box office or station agent, mail clerk or non-postal worker and an information clerk.  R. 62-63.  The ALJ then asked a series of hypotheticals to discern whether individuals with RFCs potentially comparable to Poirier's functional capacity who also use a cane to ambulate could perform those same jobs.  R. 63-64.  Vaughn testified that those previously identified jobs would not be possible, but there were other jobs at the sedentary level that an individual could perform including a document preparer, surveillance systems monitor and addressing clerk.  R. 64.  The ALJ then asked a hypothetical of whether an individual who was "absent two or more days per month" or who was "off task 20% of the workday" could perform any full-time job.  R. 64-65.  Vaughn testified that such individual could not perform a full-time job.  R. 64-65.

### 2.    *Poirier's Medical Records*

The ALJ examined extensive evidence concerning Poirier's medical history, including treatment records, assessments and diagnoses.  R. 24-32.

#### a)    Multilevel Degenerative Disc Disease and Obesity

Poirier has reported chronic back pain as early as May 2016.  R. 405.  Between 2016 and 2020, Poirier's medical records reflect that he has no "swelling in the extremities," some "tenderness" but "normal movement of all extremities," "[n]ormal range of motion" and that he has a  "normal gait" and is "ambulating normally."  R. 390, 393, 396, 399, 404, 551, 553, 617, 881, 889, 898.  An examination in May 2020 indicated that he had "normal range of motion" with no tenderness and he was moving "all extremities with strength 5/5."  R. 898, 902.  Poirier's back

pain has been managed with medication and he has attended pain management appointments.  R. 405, 616, 882, 885, 887, 890, 892, 895.  Poirier has declined recommended physical therapy to assist with his back pain because he stated that it has not worked for him in the past.  R. 405.

In December 2018,  Poirier reported to the hospital with back pain and noted that he injured his back "pulling on equipment at work" and he had "pain driving, laying down" but "no pain in his legs and no trouble walking."  R. 407-08.  He denied "any referred pain to groin area, to lower extremities" and noted that he had been prescribed meloxicam which he found helpful.  R. 408. Poirier noted that his back pain slightly improved with the use of ice and ibuprofen.  R. 408. Treating records indicate that providers recommended that Poirier try lidocaine patches and take meloxicam as needed.  R. 409-10.

Imaging records confirm that Poirier has some multilevel degenerative changes of the spine.  In July 2017, x-rays showed a "mild reversal [of] the typical cervical lordosis which may be positional or related to muscle spasm" and "[m]ultilevel mild disc space narrowing."  R. 459. In December 2018, MRI imaging noted "[m]oderate degenerative changes of the thoracic spine." R. 528, 530.  In July 2019, MRI imaging showed some multilevel degenerative changes which have progressed since the previous study.  R. 435-36, 442.

In April and May 2019, Poirier attended five sessions with a chiropractor.  R. 525-26.  He reported that "pain is constant with increased pain with any lifting, any walking, any standing" and the chiropractor records report "moderate degenerative changes of the lumbar spine" from imaging.  R. 525.  The chiropractor notes indicate that Poirier is taking medication for the pain and "[t]olerates the treatment well."  R. 525-26.

In addition to back pain, Poirier has a history of being overweight.  R. 405.  In November 2019, he was diagnosed with "class 2 severe obesity."  R. 551-52.  His primary care provider notes

have consistently recommended lifestyle and dietary changes such as increasing exercise.  See R. 405, 551-52, 885, 887, 892-93.

### b)    Hyperlipidemia and Hypertension

Poirier's medical record reflect that he was diagnosed with hyperlipidemia and hypertension.  R. 405, 550, 617-18.  In 2016, his treating physician reported that his hyperlipidemia was "not in good control" and recommended dietary changes, smoking cessation and exercise.  R. 405.  Poirier has denied symptoms of hypertension including dizziness and headaches.  R. 618, 880, 882, 885, 888, 890.  Providers have recommended lifestyle changes and Poirier's hyperlipidemia and hypertension have been maintained by medication.  R. 405, 550, 617, 882, 884, 887, 890.

### c)    Bipolar Disorder and Anxiety Disorder

Poirier's medical record reflects a history of treatment for anxiety, bipolar disorder and depression.  He has received mental health treatment from DLH Consulting and Psychiatric Services since March 2019 when his provider transferred to that facility and has therapy appointments every two weeks.  R. 535, 626.  On his initial exam, Poirier reported that he had bipolar disorder and that he experienced "high anxiety in crowds" and "worries about what others think about him."  R. 535.  The initial mental status exam indicated that he was "well-groomed" and his mood was "euthymic."  R. 535.  Treatment notes report that Poirier had fair judgment and was "alert and oriented."  R. 546, 912.  Between February 2020 and January 2021, Poirier reported having more depressive and anxious episodes and struggles with mood dysregulation with periods of feeling "ok."  R. 642, 647, 649, 652, 656, 658, 664, 668, 684, 908, 911.  He has been prescribed medication to handle his anxiety and depression and treatment records indicate that he maintained the same or similar medication and treatment plan.  See R. 541, 627, 631, 648, 653, 665, 669, 682,

685, 909, 912-13.  Treatment notes indicate that Poirier had some improved mood and anxiety with medication and providers have continued with a medication regime due to a "past history of medications showing efficacy."  See R. 538, 541-42, 545-46, 913.

Poirier has had prior suicide attempts or ideations in April 2017, November 2018 and May 2020.  R. 410, 417, 896.  In April 2017, Poirier was taken to the emergency room after an intentional overdose on lorazepam and gabapentin.  R. 417.  He noted that he was "significantly depressed" and overdosed because he was unable to see his outpatient counselor.  R. 417.  Poirier reported that his medication at the time was not working.  R. 421-22.  He was admitted to High Point Treatment Center and a mental status exam indicated that he was assessed as having bipolar disorder and anxiety.  R. 349-52.  The exam indicated that Poirier has emotional barriers to learning but he was "bright and articulate."  R. 351.  Poirier stated that he had "learned his lesson" and "will never do this again" and expressed that he "did a stupid thing."  R. 349.  At High Point, Poirier was highly motivated and willing and able to participate in treatment.  R. 354, 361.  At discharge, Poirier had an improved mood and was motivated for further treatment.  R. 380-81.

In November 2018, Poirier was taken to the emergency room after making statements to his girlfriend at the time that he would overdose on Ativan.  R. 410.  Poirier denied having suicide ideations, reported being mildly depressed and was discharged the same day.  R. 410-13.  Poirier stated that he was "attempting to get attention" that he is "remorseful" and is "future oriented."  R. 413.

In May 2020, Poirier was taken to the emergency room after stating that he had taken Ativan.  R. 896.  Poirier appeared in "acute distress" and his speech was "delayed and slurred."  R. 898.  He was discharged to a psychiatric medical facility, Taravista Behavioral Health Center, for continued observation.  R. 702, 902.  Taravista reported that Poirier was "agitated and angry"

10

upon being admitted and toxicology reports were positive for cannabis use and methadone.  R. 707.  During intake, Taravista conducted a "falls assessment" where Poirier scored 83 and was not classified as a risk for falls.  R. 716.  His diagnosis on admission was major depressive disorder and the facility made some changes to his medication regime to assist his anxiety and depression, which Poirier tolerated.  R. 721, 866.  Poirier voluntarily left and upon discharge his mood had stabilized.  R. 818, 866-67.

a)   <u>Substance Abuse</u>

As to his suicide attempt incidents, in April 2017 and in May 2020, Poirier ingested pills. R. 417, 896.  Toxicology reports have also indicated presence of marijuana, which Poirier claims is to assist with back pain, and methadone, which Poirier has denied.  R. 350, 353, 707.  On mental health risk assessments, the medical record reflects that he has not had a history of substance abuse. R. 535.

3.   *Medical Assessment by Treating Provider, Ana Richards*

In August 2019, Ana Richards ("Richards"), Poirier's treating nurse practitioner, prepared a Medical Source Statement of Ability to Do Work-Related Activities that assessed Poirier's mental function.  R. 532-34.  Concerning Poirier's understanding and memory, she noted that he was markedly limited in terms of ability to remember locations and work-like procedures as well as an ability to understand and remember detailed instructions.  R. 532.  She noted, however, that he was not significantly limited in understanding and remembering short and simple instructions. R. 532.  Concerning Poirier's sustained concentration and persistence, Richards primarily checked that Poirier was either moderately or markedly limited in some of his abilities, such as carrying out detailed instructions, maintaining attention and concentration for extended periods of time, and his ability to make simple work-related decisions.  R. 532.  She noted, however, that he was not

11

limited in his ability to carry out short and simple instructions.  R. 532.  Richards marked that

Poirier was largely markedly limited in his social interactions, including interacting appropriately

with the general public and ability to get along with coworkers and peers without exhibiting

behavioral extremes, but noted that he was not limited in asking simple questions or requesting

assistance.  R. 533.  Concerning adaptation, she indicated that Poirier was primarily moderately

limited including in responding appropriately to changes in work setting and ability to travel to

unfamiliar places or use public transportation, except that he was markedly limited in setting

realistic goals or making plans independently of others.  R. 533.  Richards concluded that Poirier

has not been able to secure employment due to his anger and mood lability and pain.  R. 533.  In

response to questions such as whether Poirier could understand, carry out or remember "simple

instructions on a sustained basis" or respond appropriately in work settings,  Richards responded

"no."  R. 534.

4.      *State Agency Expert Assessments*

The ALJ considered state agency expert assessments of Poirier's functional limits. R. 31-

32.  In November 2019, Dr. Aileen McAlister reviewed the medical records available at the time

concerning Poirier's disability claim, R. 68-74, 81-87, and opined that Poirier had severe

degenerative back disorder but his hyperlipidemia, obesity and mental health impairments of

depressive, bipolar and anxiety disorders were non severe.  R. 73, 86.  Dr. McAlister concluded

that Poirier's statements were only partially consistent with the medical record because Poirier

indicated that he could not walk more than one to two blocks but this statement was not consistent

with medical imaging.  R.  75, 88.  In November 2019, Dr. Wayne Draper conducted a residential

functional capacity analysis and concluded that Poirier had some exertional limitations such as not

climbing ropes, ladders, scaffolds but could occasionally climb stairs, kneel, crouch, and crawl.

R. 75-76, 88-89.  Dr. Draper noted that the medical records did not mention "gait disturbance or use of assistive devices for ambulation" and opined that he could perform light work but he was otherwise not disabled.  R. 77-79, 90-92.

In January 2020, Dr. Joseph Lichtman, reviewed the medical records at the time concerning Poirier's disability claim, R. 93-99, 109-13, and concluded that Poirier had severe degenerative back disorder as well as severe depressive, bipolar and anxiety disorders.  R. 99, 115.  Dr. Lichtman concluded that Poirier had non severe hyperlipidemia, obesity, and substance addiction disorder. R. 99, 115.  Dr. Lichtman concluded that Poirier's physical ailments were not consistent with exam findings and that evidence of his mental impairments were only partially supported because there was no evidence of "confusion" with comprehension or attention span.  R. 101-02, 117-18.  Dr. Lichtman's mental residential functional capacity assessment indicated that Poirier was moderately limited in conducting a normal workday, carrying out detailed instructions, maintaining attention for extended periods and responding appropriately to changes in the work setting but he was otherwise not significantly limited and could "carry out detailed but not complex instructions," sustain concentration for "2 [hour] spans" and "adapt successfully to minor changes in routine."  R. 105-06, 120-22.  He noted that an assessment from Richards, Poirier's treating practitioner, was more limited than his own findings but opined that Richards's medical opinion was without substantial support.  R. 106, 122.

In February 2020, Dr. Subbiah Doraiswami conducted a physical residual functional capacity assessment of Poirier's disability claim on reconsideration, R.137-39, 154-56, and similarly concluded that Poirier had some exertional limitations as he could not "climb ladders, ropes, scaffolds" but that he could perform "light" work and was otherwise not disabled.  R. 137-

39, 141-43, 159-60.  Dr. Doraiswami also noted that the medical records did not mention "gait disturbance or use of assistive devices for ambulation."  R. 139, 156.

In March 2020, Dr. Douglas Hanze reviewed the medical record and similarly concluded that Poirier had severe degenerative back disorder as well as severe depressive, bipolar and anxiety disorders mental impairments but his hyperlipidemia, obesity and substance addiction disorders were non severe.  R. 128-35, 145-53.  Dr. Hanze noted an updated diagnosis from the treating provider that he had bipolar disorder, social phobia and mental depression but his medication helps with anxiety.  R. 135, 152.  Dr. Hanze similarly concluded that Poirier's physical complaints were not consistent with exam findings and that evidence of his mental impairments were only partially supported because his attention span is longer than claimed.  R. 136, 153.  Dr. Hanze completed a mental residual capacity assessment and opined that Poirier was moderately limited in conducting a normal workday, carrying out detailed instructions, maintaining attention for extended periods and responding appropriately to changes in the work setting but he was otherwise not significantly limited and noted that while symptoms "may interfere with completion of a normal workday" he could do work that does not require more than simple instructions and "perform at a consistent pace without an unreasonable number and length of rest periods."  R. 139-41, 156-58.  He noted an assessment from Richards, Poirier's treating practitioner, was more limited than his own findings but opined that Richards's medical opinion was without substantial support from the medical records.  R. 141, 158.

5.     *Poirier's Function Report*

The ALJ also considered a "Function Report" submitted by Poirier that was completed in November 2019.  R. 23, 284-91.  In the report, Poirier stated that he had difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling and stair climbing.  R. 289.  In terms of

physical impairments, Poirier stated that he could only walk about one to two blocks before resting for ten minutes, could only stand for about five minutes at a time before having to take a break, it was difficult for him to dress himself and he needed to brace himself getting in and out of the shower and using the bathroom.  R. 285-86, 289.  Poirier noted that he gets sharp pains in his back that interfere with his sleep.  R. 285.  Under prescriptions, Poirier noted that he only has a prescription for glasses.  R. 290.  In terms of mental limitations, Poirier noted that he has issues with memory, completing tasks, concentration and following instructions.  R. 289.  He stated that he could only pay attention for about twenty-five minutes, can get confused with following spoken instructions, and does not handle stress well.  R. 289-90.  He indicated that his girlfriend assists him with maintaining his daily medications.  R. 286.

Poirier stated that his daily activities include primarily staying in bed and watching television due back pain and he does not feel well enough to leave the house other than to take his daughter to school if she needs a ride.  R. 284.  He noted that he can drive and typically leaves the house three to four times a month and shops for groceries about once a week where he uses a scooter to assist him getting around the store.  R. 287.  Poirier stated that he does assist in taking care of his daughter but she assists in doing most of the household chores.  R. 285-86.  He also stated that he can take care of other household duties such as preparing meals, paying bills and handling a savings accounts.  R. 286-87.  Poirier stated that he mainly socializes with his family and that he used to enjoy remote control cars and fishing but that he is no longer able to participate in these activities.  R. 288.

### C.    The ALJ's Decision

Following the five-step process, 20 C.F.R. § 416.920, at step one, the ALJ found that Poirier had not engaged in substantial gainful activity since April 24, 2017, the alleged onset date

of disability.  R. 19.  At step two, the ALJ found that Poirier suffered from the following severe impairments:  multilevel degenerative disc disease, obesity, bipolar disorder, and anxiety disorders.[4]  R. 19-20.  At step three, the ALJ found that Poirier does not have an impairment, alone or in combination, that was one of the listed impairments in the Social Security regulations requiring a finding of disability.  R. 20-22.

Before proceeding to step four, the ALJ determined Poirier's RFC through a two-step analysis.  R. 22-32.  First, the ALJ considered Poirier's underlying physical and mental impairments that could reasonably be expected to produce his alleged pain and other symptoms. R. 23-24.  Second, the ALJ evaluated the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."  R. 23-32.  As part of this step, the ALJ considered other evidence in the record to determine if Poirier's symptoms limited his ability to do work-related activities.  R. 23.

As to step one, the ALJ, relying upon Poirier's Function Report and Poirier's testimony at the hearing, concluded that Poirier's medically determinable impairments could reasonably cause the alleged symptoms.  R. 23-24.  As to step two, the ALJ concluded, however, that Poirier's statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence" and other evidence in the record.  R. 24.

---

[4] The ALJ also concluded that the following impairments were not severe:  hypertension, hyperlipidemia and substance abuse.  R. 19-20.  Poirier challenges the ALJ finding that substance abuse was considered non severe and claims there is no medical assessment of substance abuse. D. 20 at 5 n.2.  Even if the ALJ failed to conduct a proper analysis of Poirier's substance abuse, "there is a burden on the [claimant] to show, if there was an error, that the [claimant] was harmed as a result." Grant v. Colvin, CIV. A. No. 13-13102-DHH, 2015 WL 4945732, at *11 (D. Mass. Aug. 20, 2015) (holding plaintiff did not show any harm resulted from the ALJ's alleged error in analyzing substance abuse as the ALJ held plaintiff was not disabled).  Poirier has shown no such harm here from the ALJ's alleged error where the ALJ otherwise found severe impairments, but ultimately concluded that he was not disabled.

The ALJ reviewed Poirier's medical records concerning his physical and mental health.  R. 24-30.  The ALJ highlighted inconsistences between Poirier's physical allegations and the medical record evidence concerning his complaints of back pain.  R. 30.  For example, he noted Poirier's complaints of intolerable back pain and medical records that he had mild to moderate multilevel degenerative disc changes, but maintained "normal gait, station motor testing and sensory findings."  R. 30.  The ALJ noted that despite Poirier's complaints of groin and lower extremity pain, medical records indicate no complaints of such pain.  R. 30.  The ALJ noted that his treatment has been conservative and had not been prescribed use of a cane even though he claims he requires one to ambulate.  R. 30.  In evaluating Poirier's mental health, the ALJ noted that Poirier's bipolar diagnosis is longstanding and predates the alleged onset disability date.  R. 30.  The ALJ considered that Poirier has had hospitalization for suicidal ideation but his medical providers have stated that Poirier has not exhibited "significant emotional dysregulation or uncontrolled behaviors" and mental status examination findings were "consistently benign."  R. 30-31.  The ALJ noted that treatment notes indicated that Poirier's symptoms reflect improvement with medication management and counseling.  R. 31.  The ALJ further noted that Poirier managed his own personal care and could perform daily activities including some housework, managing his own finances, managing his doctor's appointments, going to the store, driving and socializing with others.  R. 31.

Accordingly, the ALJ determined that Poirier has the RFC to "perform light work" with the following exceptions:

> [Poirier] could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can tolerate occasional exposure to work place hazards (such as unprotected heights and hazardous machinery); is able to carry out simple, routine tasks, defined to include unskilled tasks that take no more than a month to learn the techniques, acquire the information, and develop the facility needed for average performance of those tasks; can carry out those tasks for 2-hour periods

throughout a 40-hour workweek; is able to make simple work-related decisions; and can
tolerate occasional, simple changes in the work routine.

R. 22-23.

In arriving at this conclusion, the ALJ stated that he considered the opinions of state agency
physicians persuasive who had provided medical assessments of Poirier's functional capacity.  R.
31.  In terms of physical impairments, the ALJ noted that these physicians opined that Poirier had
severe degenerative disc disease but that he could perform "work at a light exertional level" with
occasional limitations such as "no climbing of ladders, ropes and scaffolds, and avoidance of
hazards."  R. 31.  The ALJ credited that these assessments aligned with Poirier's routine and
conservative treatment course.  R. 31.  Concerning mental impairments, the ALJ noted that the
state agency consultants changed their assessment of Poirier's mental impairments from initially
non severe to having a "mild limitation in understanding, remembering or applying information
and interacting with others and a moderate limitation in concentrating, persisting or maintaining
pace and adapting or managing himself" upon further consideration.  R. 31.  The ALJ credited
these opinions because it conformed with Poirier's longitudinal medical treatment which showed
stabilization with treatment and "generally benign mental status examinations" and his reported
daily living activities.  R. 31-32.

The ALJ also addressed Richards's Medical Source Statement of Ability to Do Work-
Related Activities assessment as she was Poirier's treating provider for bipolar disorder and
generalized anxiety.  R. 26, 32.  The ALJ found Richards's opinion not persuasive because "her
assessment of marked limitations is inconsistent with her own treatment notes" and the record
which generally indicates that despite waxing and waning symptoms, Poirier maintained a benign
mental status and showed improvement with medication and counseling.  R. 32.  Poirier disputes
the RFC assessment.  D. 20 at 8-10; D. 30 at 1-4.

18

After determining Poirier's RFC, the ALJ proceeded to steps four and five. At step four, the ALJ concluded that Poirier was unable to perform any past relevant work. R. 32-33. At step five, the ALJ determined that considering Poirier's age, work experience and RFC, that there are other jobs that exist in significant numbers in the national economy that Poirier can perform. R. 33-34. Relying on the vocational expert's testimony, the ALJ stated that Poirier could perform the following jobs: cashier and ticket sales, mail clerk and information clerk. R. 33-34. The ALJ, therefore, concluded that Poirier was not disabled as defined by the Social Security Act. R. 34.

IV.     **Discussion**

Poirier seeks reversal of the ALJ's decision and a remand to the ALJ for reconsideration. D. 18; D. 20 at 13. Poirier contends that the ALJ erred in two respects: (1) the ALJ's assessment of his physical RFC was not supported by substantial evidence because the ALJ failed to properly consider Poirier's need for a cane, D. 20 at 8–10, and (2) the ALJ misled counsel about a post-hearing consultative examination concerning his mental impairments. Id. at 10-13.

   A.     <u>**The ALJ's Assessment of Poirier's Use of the Cane**</u>

Poirier contends that the ALJ failed to properly assess his use of a cane and, therefore, the ALJ's resulting RFC and decision was not based on substantial evidence. D. 20 at 8. Specifically, Poirier asserts that the ALJ erred because his reasoning concerning his cane use was confined to whether the cane had been prescribed and the ALJ did not account for Poirier's perceived pain. Id.; D. 30 at 1-4. The Court finds these arguments unavailing.

First, the ALJ appropriately considered Poirier's cane use when determining Poirier's RFC. In consideration of the RFC, the ALJ noted that Poirier stated that "[h]e has been using a cane for about a year. He keeps the cane with him at all times. While he could stand without the cane, he would fall. His physician did not prescribe the cane." R. 23. The ALJ questioned Poirier

concerning his use of the cane at the hearing and he confirmed that he bought a cane because it helped him but a doctor had not prescribed it.  R. 48-49.  The ALJ heard testimony that Poirier had not seen his doctor in person because of the pandemic.  R. 48-49.  In his decision, the ALJ noted that "[t]o the extent the claimant testified to limitations greater than found, I deem that testimony inconsistent with the medical evidence and other evidence."  R. 30.

When assessing a claimant's RFC, an ALJ need not consider conditions for which there is only "a paucity of medical evidence in the record." Perez v. Sec'y of Health & Hum. Servs., 958 F.2d 445, 447 (1st Cir. 1991).  For a cane to be "medically required" and to be used in an RFC assessment, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P, 1996 WL 362208, at *7 (S.S.A. July 2, 1996).

Here, there is no medical documentation that Poirier required the use of a cane.  Although Poirier states that a cane does not need a formal prescription to be considered, D. 30 at 4, there is nothing in the medical record, aside from his own statements at the hearing and his Function Report, that any provider has considered use of a cane to be medically necessary.  See R. 48-49, 284-91.  To the contrary, there is substantial evidence in the medical record that Poirier had a "normal gait," "normal range of motion" and is "ambulating normally."  See R. 390, 393, 399, 551, 619, 898.  Unless there is "'medical documentation' establishing that a cane is 'medically required,' there is no error in the ALJ's omission of it" from the RFC.  See Durfee v. Berryhill, No. 16-079M, 2017 WL 877272, at *5 (D.R.I. Feb. 15, 2017), report and recommendation adopted, No. 16-79-M, 2017 WL 875825 (D.R.I. Mar. 3, 2017) (concluding that the ALJ did not err in

omitting claimant's use of a cane from the RFC because there was no medical documentation of its necessity).

Poirier also contends that the ALJ further erred by inquiring into the vocational impacts of Poirier's use of a cane at the hearing but then not incorporating that testimony into his final decision.[5]   D. 20 at 9.   It is, however, not necessary for the ALJ to incorporate the use of a cane in the RFC or vocational expert hypothetical just "because a claimant prefers to use it or finds it helpful" when there is no supporting medical documentation.   Durfee, 2017 WL 877272, at *5 and cases cited.   The ALJ's determination that the cane was not medically required is supported by substantial evidence in the record.   See James v. Berryhill, No. 18-CV-396-PB, 2019 WL 480221, at *5 (D.N.H. Feb. 5, 2019), aff'd sub nom., James v. Saul, No. 19-1345, 2020 WL 7213200 (1st Cir. Aug. 10, 2020) (concluding that the ALJ did not err by excluding claimant's use of the cane from the RFC assessment because there was no medical documentation of the use of the cane and the cane was not prescribed).

Second, Poirier contends that the ALJ did not appropriately assess how his pain could reasonably produce the medical impairments and contribute to Poirier's use of the cane.   D. 30 at 2-4.   Poirier asserts that the ALJ was required to apply the First Circuit's pain analysis enumerated in Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28–29 (1st Cir. 1986), when making a credibility determination concerning Poirier's subjective complaints.   R. 30 at 3.   The six Avery factors that an ALJ must consider are:   "1. [t]he nature, location, onset, duration, frequency,

---

[5] Although Poirier challenges the viability of jobs Vaughn listed that Poirier could perform with a cane, D. 20 at 9, the ALJ did not base his decision on those jobs.   R. 33-34.   The Court finds that the ALJ also did not err in citing jobs in his decision that Poirier could perform based on an individual who was not using a cane.   See D. 29 at 11; see also Arroyo v. Sec'y of Health & Hum. Servs., 932 F.2d 82, 89 n.11 (1st Cir. 1991) (holding that the ALJ did not err when relying on jobs that the vocational expert identified the claimant could perform if he was not drinking because there was substantial evidence that the claimant could control his alcohol consumption).

radiation, and intensity of any pain; 2. [p]recipitating and aggravating factors (e.g., movement, activity, environmental conditions); 3. [t]ype, dosage, effectiveness, and adverse side-effects of any pain medication; 4. [t]reatment, other than medication, for relief of pain; 5. [f]unctional restrictions; and 6. [t]he claimant's daily activities."  Avery at 797 F.2d at 28-29 (concluding that "[i]n developing evidence of pain or other symptoms, it is essential to investigate all avenues presented that relate to the subjective complaints").

The ALJ is "not required expressly to discuss every [Avery] factor" in his decision.  Lill v. Astrue, 812 F. Supp. 2d 95, 103 (D. Mass. 2011) (citing Gordils v. Sec'y of Health & Hum. Servs., 921 F.2d 327, 330 (1st Cir. 1990)).  The ALJ need only consider these Avery factors.  Bazile v. Apfel, 113 F. Supp. 2d 181, 188 (D. Mass. 2000).  Here, although the ALJ did not expressly address all the factors in his decision, the record reflects that the ALJ considered each Avery factor in making his credibility determination, R. 23-32, which is reflected in his inquiry at the administrative hearing and in his decision.  The ALJ provided a detailed analysis of Poirier's symptoms and the intensity, persistence and limiting effect of his physical pain.  R. 23-32.  The ALJ considered, among other things, that Poirier alleged difficulties with "lifting, squatting, bending, standing, reaching, walking, sitting, kneeling and stair climbing," R. 23, Poirier testified that he uses a cane that was not prescribed from a doctor, R. 30, and medical examinations which state that Poirier has "normal gait, station, motor testing and sensory findings."  R. 30.  The ALJ also considered that Poirier testified that he was able to drive his brother to pick up scrap metal and he occasionally visits the grocery store.  R. 23-24, 48.  The ALJ inquired about Poirier's pain at the hearing and noted that he has "back pain that radiates from his mid to low back into his groin and down his left leg" and he is never "completely comfortable."  R. 23, 49.  The ALJ also noted that Poirier has not undergone any surgery and he "plans to attend physical therapy" but that the

pandemic had interrupted his treatment.  R. 23.  The ALJ considered that Poirier's treatment has been "routine" and his pain has been medically managed.  R. 30.  The ALJ noted that Poirier generally spends his days in bed due to depression or watches television at his mother's house and he socializes minimally with his mother, brother, cousin and daughter.  R. 24.

In assessing the credibility of Poirier's testimony, the ALJ explained that his "medically determinable impairments reasonably could be expected to cause some of the symptoms; however, [Poirier's] statements as to the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  R. 24.  The ALJ noted inconsistencies that although Poirier uses a cane to ambulate, R. 30, "no treating source has identified any limitations due to any physical impairment."  R. 31.  Although Poirier asserts that imaging provides an objective basis for his pain and impairment related to his back, D. 30 at 3-4, the ALJ must still find that Poirier's statements about his back pain credible concerning the scope of his limitations.  Avery, 797 F.2d at 21 (recognizing that the ALJ must still assess the credibility of statements by the claimant and physicians even when those statements align with objective medical findings).  The ALJ can reject subjective statements of functional limitations and pain if the statements "are unsupported by the medical evidence, treatment history, and activities of daily living."  Rooney v. Astrue, No. 09-cv-30163-MAP, 2010 WL 4027732, at *7 (D. Mass. Sept. 2, 2010).  In assessing Poirier's statements, the ALJ considered the record as a whole and concluded that Poirier's statements concerning the severity of his pain were "inconsistent with the medical evidence" and his use of a cane was not medically supported.  R. 30.  The Court finds no error.  See Rooney, 2010 WL 4027732, at *8 (reasoning that the ALJ's credibility determination should be respected regarding claimant's subjective pain because the ALJ reconciled inconsistencies in the record and based his decision on the whole record).

The Court is also not persuaded by Poirier's argument that the ALJ did not consider the interplay of his mental impairments with his pain which could inform his use of a cane.  D. 20 at 9.  The ALJ noted that he "base[d] his decision on the record as a whole, including each of the claimant's impairments, both singly and in combination" which is evident by the ALJ's analysis which details both the physical and mental impairments.  See R. 23-32;  Carrara v. Kijakazi, No. 21-cv-10239-DJC, 2022 WL 4111799, at *9 (D. Mass. Sept. 8, 2022), aff'd, No. 22-1861, 2023 WL 7474407 (1st Cir. June 26, 2023) (reasoning that the ALJ did not err in considering all of the claimant's combined impairments when the ALJ prefaced his decision with "[a]fter careful consideration of the entire record").  Accordingly, the ALJ did not err in failing to incorporate Poirier's use of the cane and the resulting RFC is supported by substantial evidence.

### B.      The ALJ Did Not Err in Not Ordering a Consultative Evaluation

Poirier argues that the ALJ erred because he misled counsel into believing that there was a need for post-hearing development of his mental health record and failed to inform counsel to provide their own consultative examiner or supplement the record.  D. 20 at 10-12.  At the close of the hearing, the ALJ stated that "one thing that I'm going to consider is whether the [claimant] benefits from a consultative examination" with a psychologist.  R. 65.  Poirier asserts that he believed that the ALJ's statement put the proceedings into post-hearing development and reached out to the ALJ requesting an expedited examination in December 2020 but received no response. D. 20 at 10 (citing R. 348).  Poirier contends the ALJ erred in issuing a decision without conducting a post-hearing consultative examination.  Id. at 10-12.

Although the ALJ has an affirmative duty to develop the administrative record, the ALJ is "under no obligation to seek additional information where there are no obvious gaps in the record, and where there is a complete medical history."  Veiga v. Colvin, 5 F. Supp. 3d 169, 176-77 (D.

Mass. 2014).  The ALJ did not affirmatively state that he would definitely order a consultative examination, but only that he would "consider" whether a further examination was necessary.  R. 65.  As the ALJ has no duty to develop the record unless gaps exist, it is plausible that the ALJ, upon further consideration, decided that the record as it stood contained sufficient information to make a determination concerning Poirier's mental health impairments.  This does not constitute reversible error.  See Powers v. Barnhart, No. 04-86-P-C, 2004 WL 2862170, at *7-8 (D. Me. Dec. 13, 2004) (concluding that there was no reversible error in the administrative law judge's decision not to obtain a post-hearing consultation after affirmatively stating at the hearing that he intended to obtain one because the ALJ decided that the record was sufficient upon further consideration); Afolabi v. Astrue, No. C.A. 07-243ML, 2008 WL 4680927, at *4-6 (D.R.I. Oct. 22, 2008) (holding the ALJ did not err by not seeking a further consultative examination that he mentioned at the hearing because "the ALJ made no promises regarding further development of the record, simply stating that he would take the request for further development under review" and there were no obvious gaps in the record).

Even assuming arguendo that Poirier's December 2020 letter was a request for a consultative hearing, it is well-established that "remand is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing."  Evangelista v. Sec'y of Health & Hum. Servs., 826 F.2d 136, 139 (1st Cir. 1987) (affirming that remand was not appropriate because there was no indication that an additional medical opinion concerning the claimant's alleged ailments would have provided new and material information to change the outcome of the ALJ decision).  Poirier asserts in his reply that remand is necessary to develop the

record because the medical record was devoid of a specific opinion by a treating source regarding Poirier's level of psychiatric impairment.  D. 30 at 4-5.

Here, however, the medical records concerning Poirier's mental health documentation are voluminous, including multiple reports spanning over the course of years from his ongoing treatment at DHS Consulting and Psychiatric Services and inpatient psychiatric stays following suicide attempts.  See R. 349-87, 535-48, 626-879, 908-14.  The ALJ recounted each of these records spanning from 2017 to 2021 in his decision which included Poirier's diagnoses, treatment and assessments of his psychiatric state.  R. 26-30.  The ALJ also considered an assessment from Poirier's treating provider, Richards, concerning Poirier's impairments that related to his mental status.  R. 32.  Although the ALJ afforded this assessment less weight because of the inconsistencies in this assessment to the record, R. 32, that does not create a gap as there was extensive documentation from treating and non-treating sources concerning Poirier's impairments. See R. 85-88, 99-101, 104-06, 115-18, 120-22, 134-36, 139-41, 151-53, 156-58, 349-87, 535-48, 626-879, 908-14.  Based on the substantial evidence in the record concerning Poirier's psychiatric impairment, there is no indication that the extent of Poirier's mental health impairment was underdeveloped in the record to warrant remand.  See Ribeiro v. Barnhart, 149 Fed. Appx. 7, 8 (1st Cir. 2005) (affirming that ALJ did not err in failing to develop the record by not requesting information from a treating physician because "[t]he [claimant] makes no showing, however, that the duration of her impairment defied reasoned evaluation on the record").  For these reasons, the Court holds there is no basis for remand.

## V.      Conclusion

For the reasons stated, Poirier's motion to reverse and remand, D. 18, is DENIED and the Commissioner's motion to affirm, D. 28, is ALLOWED.

**So Ordered.**

/s Denise J. Casper
United States District Judge